## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

## COLUMBIA DIVISION

| | |
|---|---|
| FREDDIE LEE GLOVER, #181163, ) | |
| ) | |
| Petitioner, ) | Civil Action No.  3:10-2277-DCN-JRM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| WARDEN MCCORMICK ) | |
| CORRECTIONAL INSTITUTION, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Petitioner, Freddie Lee Glover ("Glover"), is an inmate at the South Carolina Department of

Corrections serving a sentence of life imprisonment without the possibility of parole ("LWOP") for

armed robbery, first degree burglary, and kidnapping. He filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 which was received by this Court on August 30, 2010.

Respondents filed a return and motion for summary judgment on January 28, 2011. Because Glover

is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was

issued on January 31, 2011 explaining to him his responsibility to respond to the motion for summary

judgment. Glover did not file a response but did file a motion for summary judgment on March 23,

2011.  Respondent filed a memorandum in opposition to Glover's motion for summary judgment on

April 14, 2011.

### Background and Procedural History

Glover was convicted of a home invasion burglary, robbery, and kidnapping of the residents.

The victims testified that on the afternoon of December 27, 2002, Glover burst into their home

wearing a pantyhose mask, gloves and brandishing a pistol.  He made them lie on the floor and took

whatever money they had. Then things took a bad turn for Glover. Two of the victims disarmed Glover, beat him into unconsciousness, and tied him up until the police arrived. Glover testified at trial that he had been drinking since Christmas day, thought he was home, and told the victims to leave his house. According to Glover, he had no pistol, and the victims put the pantyhose and gloves on him after they had subdued him. Glover was arrested at the scene.

A jury convicted Glover as charged and he was sentenced to LWOP on the three indictments. Glover was represented at trial by Lawrence Simmons, Esquire.

An Anders[1] brief was filed on Glover's behalf by the South Carolina Commission on Indigent Defense raising the following issue:

> Whether the trial court erred in allowing appellant to be impeached with a prior burglary conviction without first determining if the prejudicial effect of the prior conviction outweighed the probative value?

(App. 298).

Pursuant to state procedure, Glover filed an "Initial Pro Se Brief of Appellant" raising the following additional grounds:

1. The lower court lacked subject matter jurisdiction because State failed to supply preliminary hearing?

2. Denial of effective assistance of counsel?

3. The lower court erred in admitting the revolver into evidence at trial?

4. The lower court erred in sentencing appellant to life without parole via a prior most serious offense which was too remote in time?

5. The lower court erred in not instruction jury as to life without parole?

6. The lower court erred by misconduct in jury selection process?

---

[1] Anders v. California, 386 U.S. 738 (1967).

2

Glover's convictions were affirmed by the South Carolina Court of Appeals. *See* State v. Glover,

2005-UP-080 (S.C.Ct.App. filed February 24, 2005). Glover's petition for a rehearing was denied

on April 21, 2005. Glover did not seek further review by the South Carolina Supreme Court and the

Court of Appeals sent the Remittitur on June 2, 2005.

Glover filed an application for post-conviction relief ("PCR") on January 20, 2006. (App.

308). An evidentiary hearing was held on October 11, 2007. (App. 354). Glover was represented

by Tara Dawn Shurling, Esquire. The PCR court issued an order of dismissal on November 14, 2007.

(App. 429). Glover's motion to alter or amend the order of dismissal (App. 439) was denied on June

3, 2008 (App. 446).

A Johnson[2] petition for writ of certiorari was filed by the South Carolina Office of Appellate

Defense raising the following issue:

> Did the PCR judge err in refusing to find counsel ineffective for failing to properly object when the trial judge, in response to a question from the jury in regard to ownership of the gun, instructed the jury to not worry about where the gun came from?

Glover filed a *pro se* brief raising the following additional claims:

> I.    Did the PCR judge err in refusing to find counsel ineffective for failing to properly object that the jury venire was not dispositive of the population in Lexington County in that it contained so few members of the African- American race?
>
> II.   Did the PCR judge err in refusing to find counsel ineffective for failing to properly make a pretrial motion to quash the indictment on the ground that it failed to state with specificity the State's theory for first degree burglary?

---

[2]Johnson v. State, 364 S.E.2d 201 (S.C. 1988).

3

III.    Did the PCR judge err in refusing to find counsel ineffective for opening the door to the line of inquiry from the jury to the question of the ownership of the pistol?

IV.    Did he PCR judge err in refusing to find counsel ineffective for failing to properly object to the State's opening and closing statements in which the petitioner was characterized repeatedly as the grinch who stole Christmas?

The petition for writ of certiorari was denied by order of the South Carolina Supreme Court dated February 5, 2010. The Remittitur was returned on February 23, 2010.

### Grounds for Relief

In his present petition, Glover asserts that he is entitled to a writ of habeas corpus on the following grounds:[3]

**Ground One:**    Petitioner was denied Due Process and Fundamental Fairness and Denied Due Process of His Six and 14 Amendments to the Constitution of the United States. [(1) denied] access to evidence in P.C.R. [the jury note referenced in the trial transcript was not in the clerk's office and (2) state's duty to disclose incident report re: pistol]... [PCR judge erred in failing to find counsel ineffective for failing to properly object to judge's instruction on pistol]

**Ground Two:**    Ineffective Assistance of Trial Counsel I was never served a Notice with the State Seek a Life Sentence. [Petitioner not personally served with notice]

**Ground Three:**    Counsel for the Applicant was ineffective for not motion the Court Two [sic] Squash [sic] the

---

[3]These are the grounds paraphrased by Respondent because the grounds alleged in the petition are not clear. Glover does not appear to object to the grounds as restated.

4

|                      | Indictment for 16-11-311 Held Know Facts to Show... [lack of notice argument] |
|----------------------|---|

**Ground Four:**            A revolver was admitted into evidence, the victim or nobody else had testified at trial. The revolver was admitted into evidence... without identification or verification as to where it came from...

**[Ground Five:]**       Ineffective Assistance of Trial Counsel [failed to object to reference to Petitioner as] "the grinch who stole Christmas"

**[Ground Six:]**        Ineffective Assistance of Appellant Counsel [failed to brief correctly; failed to file a merits brief]

**[Ground Seven:]**    Ineffective Assistance of Trial Counsel [failure to object to all White Jury]

**[Ground Eight:]**     Denied Due Process and Fundamental Fairness [chain of custody not established for admitted pistol]

**[Ground Nine:]**      Ineffective Assistance of Counsel [failed to object to denial of jury trial to determine life without parole sentence]

## Discussion

### A.  Anti-Terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations

Respondent asserts that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA.  The AEDPA became effective on April 24, 1996.  The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.  One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.  Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

 (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the Petitioner's conviction becomes final, not at the end of collateral review.  Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000).  In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction.  Rule 203(b)(2), SCACR.  Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt.  Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001).  If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court.  Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  The statute of limitations is tolled for the entire period of the state post-

6

conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling. Equitable tolling applies only in "those rare instances where–due to circumstances external to the [Petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [Petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable

tolling. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Pace, 544 U.S. at 418. An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). *See also* Harris, 209 F.3d at 331.

The first step in determining whether a § 2254 petition is timely is to ascertain when the limitation period began to run pursuant to 28 U.S.C. § 2244(d)(l)(A)-(D). In this case, the limitation period began to run at the conclusion of direct review (i.e., when his conviction became final). Glover's appeal was filed in the South Carolina Court of Appeals. The convictions were affirmed and Glover's petition for rehearing was denied on April 21, 2005. The South Carolina Court of Appeals issued the Remittitur on June 2, 2005, after the time had lapsed for Glover to have sought further review by the South Carolina Supreme Court. Because Glover did not seek review by the South Carolina Supreme Court, he is not entitled to an additional 90 days that would have been available to seek review by the United States Supreme Court. *See* Johnson v. South Carolina, 2007 WL 1893901, *5 (D.S.C.); Douglas v. Burtt, 2008 WL 3823871, *5-6 (D.S.C.); Lyles v. Warden, 2009 WL 3007377, *6 n.4 (D.S.C.); Reddock v. Ozmit, 2010 WL 568870, *5 n.5 (D.S.C.); Roberts

v. Riley, 2010 WL 4638712, *2-3 n.3 (D.S.C.); and Ceasar v. Padula, 2010 WL 5812723, *3 n.4 (D.S.C.).[4]

Therefore, the undersigned concludes that Glover's conviction became final on June 2, 2005 with the return of the Remittitur by the South Carolina Court of Appeals, and the statute of limitations began to run at that time. Time continued to run until Glover filed his PCR action on January 20, 2006. Two hundred thirty one (231) days of untolled time had lapsed at that point. The statute of limitations remained tolled until February 23, 2010 when the South Carolina Supreme Court returned the Remittitur ending collateral review.

The next analytical step is determining when the petition was filed in this Court. The petition is undated, but Glover certifies that he placed it in the prison mailing system on August 16, 2010. (*See* Petition, p. 13). The envelope in which the petition was received by this Court on August 30, 2010 shows that it was received by the prison mailroom on August 27, 2010. Pursuant to Houston v. Lack, 487 U.S. 266 (1988) and giving Glover all benefit of the doubt, the undersigned will use the date certified by Glover, August 16, 2010, as the filing date. One hundred seventy-four (174) days of untolled time lapsed between the end of collateral review and the date of the filing of the present petition. Combining the two periods of untolled time, four hundred five (405) days of untolled time

_____

[4]In State v. Lyles, 381 S.C. 442, 673 S.E.2d 811, 813 (S.C. 2009), the South Carolina Supreme Court held that it "will no longer entertain petitions for writs of certiorari where the Court of Appeals dismissed an appeal after conducting an Anders review. Thus, in cases resolved by the South Carolina Court of Appeals on Anders review, a petitioner would be entitled to a period of 90 days to seek review by the United States Supreme Court from the decision by the South Carolina Court of Appeals. Glover's case was decided before the Lyles decision.

lapsed between the date Glover's conviction became final and the filing of the present petition.

Therefore, the undersigned concludes that the present petition was not timely filed.[5]

## B. Merits

Since Glover filed his petition after the effective date of the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d),

as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert.*

*denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525

U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--(1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or (2) resulted in
> a decision that was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  *See* Williams

v. Taylor, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court

must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that contradicts
> the governing law set forth in [Supreme Court] cases .... A state- court
> decision will also be contrary to this Court's clearly established precedent if
> the state court confronts a set of facts that are materially indistinguishable
> from a decision of [the Supreme] Court and nevertheless arrives at a result
> different from [the Court's] precedent.

* * *

---

[5]Glover does not address the AEDPA statute of limitations in any of his filings.  He makes
no argument that he is entitled to equitable tolling.

> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

       1.    Ineffective Assistance of Trial Counsel

Glover raises several issues with respect to the effectiveness of trial counsel. In a portion of Ground 1, Glover asserts that counsel was ineffective for failing to object to the trial court's instructions relative to a note received from the jury during deliberations, and ensuring that the note and the court's comments were a part of the record. In Grounds 2 and 3, Glover asserts that counsel was ineffective for not asserting that he (Glover) was not personally served with the LWOP notice and moving to quash the indictment on that basis. In Ground 5, Glover asserts that counsel was ineffective for failing to object to the State's opening and closing arguments that referenced "The Grinch Who Stole Christmas." In Ground 7, Glover asserts that counsel was ineffective for failing to raise a <u>Batson</u> challenge. In Ground 9, Glover asserts that counsel was ineffective for failing to move that the jury determined that he was subject to the penalty of LWOP.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970). In the case of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can

be shown, the court must consider whether the commission of an error resulted in prejudice to the

defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell

below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney

performance remains simply reasonableness under prevailing professional norms." Turner v. Bass,

753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986).

In meeting the second prong of the inquiry, a complaining defendant must show that he was

prejudiced before being entitled to reversal.  Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional  errors, the result of the proceeding
> would have been different.  A reasonable probability is a probability
> sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the
> reasonableness of counsel's challenged conduct on the facts of the
> particular case, viewed as of the time of counsel's conduct. . . the court
> must then determine whether, in light of all the circumstances, the
> identified acts or omissions were outside the wide range of
> professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

habeas court must determine whether the state court's decision "was contrary to, or involved an

unreasonable application of clearly established Federal law, as determined by the Supreme Court of

the United States." 28 U.S.C. § 2254(d)(1).  The court's analysis should center on whether the state

courts properly applied the Strickland test.  *See* Williams v. Taylor, 529 U.S. 362 (2000).

("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

> a.     The Pistol

As noted earlier, the victims testified that Glover was armed with a pistol when he entered the residence. Glover's gloves, mask, and other clothing were admitted into evidence without objection. When the State initially moved to introduce the pistol, counsel objected based on a lack of foundation. (App. 102-103). At that point, the police officer who had recovered the pistol had not testified. The objection was sustained. After the officer who had recovered the pistol had testified, the pistol was admitted into evidence without objection. (App. 107).

During deliberations, the jury sent a note to the court. The index to the trial transcript indicates that the note was entered as a court exhibit. (App. 4). However, the note is not a part of the record and there is no discussion on the record concerning the note or the court's response to it. (App. 278-279).

At the PCR hearing, Glover presented a witness that had searched the exhibits from trial retained by the Clerk of Court who testified that the note could not be found. (App. 404). At the PCR hearing, Glover asserted that the question was, "where did the gun come from." (App. 359). Trial counsel testified that the judge instructed the jury to "disregard where the gun came from."[6] At trial Glover had testified that he did not enter the house with the pistol. (App. 189). During closing arguments, trial counsel argued that "(t)he State did not prove the origination of this gun whatsoever," i.e., by record check, and that the pistol actually belonged to the victims. (App. 248).

---

[6]The court's instruction on this issue was the issue raised in the <u>Johnson</u> petition.

Glover appears to assert in Ground 1 that trial counsel was ineffective for failing to ensure that the note sent by the jury, and the court's response to the note were not a part of the record. Since the transcript shows that the note was made an exhibit, Glover's argument is without merit. Glover has not shown what further counsel could have done. Also the PCR court found that "although it is strange that the conversation [colloquy concerning the pistol] is somehow not a part of the record, it is not the fault of [trial] counsel." (App. 437).

b.    Notice

South Carolina Code Ann. § 17-25-45 provides for the imposition of LWOP if a defendant has been previously convicted of one or more "most serious" offenses. The statute further provides that if "the solicitor...determines to seek sentencing of a defendant under this section, written notice must be give by the solicitor to the defendant and defendant's counsel not less than ten days before trial." S.C.Code Ann. § 17-25-45(H). However, the South Carolina Supreme Court has ruled that ten days "actual notice" satisfies the statute. James v. State, 372 S.C. 287, 294-295, 641 S.E.2d 899, 904 (S.C. 2007).

In Grounds 2 and 3 of the present petition, Glover asserts that counsel was ineffective because he (Glover) was not personally served with an LWOP notice, and counsel did not move to quash the indictment on that basis. Glover does not assert that he did not have actual notice. Ground 2 was not raised and addressed by the PCR court. It is therefore procedurally barred. (*See* discussion below). Trial counsel testified that he never considered making a motion to quash the indictment. (App. 434). The PCR court concluded that "counsel was not deficient for not making a motion to quash the indictments." (App. 436).

c.      The Grinch

The State likened Glover to the "Grinch Who Stole Christmas" during argument based on the proximity of the home invasion to Christmas.  Glover asserts that his attorney was ineffective for failing to object.  This issue was raised in the PCR but was not ruled on.  However, it was raised in Glover's *pro se* brief, and it is properly before this Court. *See* Norris v. South Carolina , 37 F.App'x. 71 (4th Cir. 2002) (unpublished).  (*See* discussion below).

In South Carolina, the Solicitor's arguments must be carefully tailored as not to appeal to the personal biases of the jury. State v. Copeland, 321 S.C. 318, 468 S.E.2d 620 (1996).   Argument is to be confined to evidence in the record and reasonable inferences that may be drawn therefrom. *Id.* The Solicitor "has a right to state his version of the testimony and comment on the weight to be given such testimony." Randall v. State, 356 S.C. 639, 642, 591 S.E.2d 608, 610 (2004). In reviewing the case as a whole, even if it were determined that the Solicitor's arguments referencing "the Grinch" were improper and trial counsel should have objected, the failure did not rise to the level of ineffective assistance of counsel entitling Glover to habeas relief.  Under the Strickland standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." Strickland, 466 U.S. at 694.  The evidence against Glover was overwhelming.

d.      Batson

Batson v. Kentucky, 476 U.S. 79 (1986) holds that the use of peremptory challenges to exclude jurors based on their race violates the Equal Protection Clause.  In Ground 7, Glover asserts that his attorney was ineffective for failing to object to members of his race being purposely excluded from the jury.  This issue was addressed by the PCR court.  However, in his *pro*

*se* brief, Glover asserted his attorney was ineffective "for failing to properly object that the jury venire was not dispositive of the population in Lexington County in that it contained so few members of the African-American race."

The PCR court found that counsel was not ineffective for failing to make a <u>Batson</u> motion or for failing to challenge the racial composition of the jury venire. The record shows that Glover was convicted by an all white jury, but that one of the two alternates was an African-American. The State only exercised two peremptory challenges and both of them were to excuse white jurors. (App. 5-6). There is no record of the racial composition of the jury venire.

e.    Sentencing

In Ground 9, Glover asserts that his attorney was ineffective for failing to object to his sentencing by the court instead of the jury. The claim was not raised in the PCR or its appeal. It is procedurally barred. (*See* discussion below). The South Carolina recidivist statute requires the mandatory LWOP sentence to be imposed upon a qualifying defendant. Glover provides no basis that the jury, rather than the court, should determine the sentence.

Glover has not shown that the South Carolina courts failed to properly apply the <u>Strickland</u> standard.

2.    <u>Ineffective Assistance of Appellate Counsel</u>

In Ground 6, Glover asserts that his counsel on direct appeal was ineffective because a "merits brief" was not filed. Under the <u>Anders</u> procedure, appointed appellate counsel is required to review the record and if he determines an appeal to be wholly frivolous, he must so advise the court and request permission to withdraw. This request must be accompanied by a brief identifying anything in the record which might arguably support an appeal. South Carolina procedure requires

16

the appellate court to notify the appellant of the filing of the <u>Anders</u> brief and of his opportunity to file a brief raising other issues.  That procedure was followed in this case and Glover filed a *pro se* brief raising other issues.

The right to effective assistance of counsel extends to direct appeal. <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).  The <u>Strickland</u> test applies equally to claims of ineffective assistance of appellate counsel.  Glover cannot show prejudice because he was allowed to raise any issue he desired in his *pro se* brief.

### 3.    Jury Note and Transcript

Glover appears to assert in Ground 1 a free standing claim that his right to due process was violated because the note sent by the jury to the court about the pistol and the transcript of the court's instruction to the jury were not available for the PCR hearing.  The PCR court dealt with the issue as a claim of ineffective assistance of counsel as discussed above.  The due process claim was not presented to the PCR court or on appeal.  It is therefore, procedurally barred. (*See* discussion below).

### 4.    Incident Report

Glover also appears to assert a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), in Ground 1 of his petition.  According to Glover, an incident report showing that the pistol, which was recovered from the crime scene, had been stolen in Columbia several days before the home invasion (*see* Incident Report, App. 426), was not disclosed prior to trial.  The fact that the pistol carried by Glover was stolen was mentioned at trial, outside the presence of the jury, (App. 30), but evidence of that fact was not presented to the jury at trial. (App. 30 and 377).  Glover does not

17

indicate the exculpatory nature of the incident report. In any event, this issue was not presented to the South Carolina appellate courts and is procedurally barred. (*See* discussion below).

     5.     Admission of the Pistol into Evidence

In Grounds 4 and 8 of the petition, Glover makes further arguments concerning the admission of the pistol into evidence at trial. Generally, unless there are "circumstances impinging fundamental fairness or infringing specific constitutional protections" admissibility of evidence at a state trial does not present a federal constitutional question. Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960). Glover seems to believe that ownership of the pistol had to be established before the pistol was mentioned or admitted into evidence. He cites no precedent for his argument. As discussed above, counsel initially objected to the introduction of the pistol. After the officer who recovered the pistol at the crime scene testified, the pistol was admitted into evidence.

**C. Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

     1.     Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)  there is either an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and <u>Blakeley v. Rabon</u>, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq.* A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. <u>Simmons v. State</u>, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. <u>Marlar v. State</u>, 375 S.C. 407, 653 S.E.2d 266 (2007). In <u>Bostic v. Stevenson</u>, 589 F.3d 160, 162-65 (4th Cir. 2009), the Fourth Circuit held that, prior to the decision of the South Carolina Supreme Court in <u>Marlar</u>, that South Carolina courts had not consistently enforced a procedural bar based on the PCR applicant's failure to file a motion pursuant to Rule 59(e). Therefore, for matters in which the PCR court ruled prior to <u>Marlar</u> (i.e., November 5, 2007), this Court should not consider the failure of the applicant to file a Rule 59(e) motion to obtain a ruling on a properly raised issue as a procedural bar.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[7]   Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely.   Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

    2.   Procedural Bypass[8]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts.  If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition.  The United States Supreme Court has clearly stated that the procedural bypass of

---

[7]In cases where the South Carolina Supreme Court applied a procedural bar, however, this Court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[8]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

22

3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty

23

of his claim, or show interference by state officials.  Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988).  Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective.  Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993).  A petitioner must show reasonable diligence in pursuing his claim to establish cause.  Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996).  Further, the claim of cause must itself be exhausted.  Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice.  Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000).  Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice.  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default.  O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997).  To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence.  Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999).  A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence.  Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

     5.    Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents.  Gray v. Netherland, 518 U.S. at 165-66.  It is petitioner's burden to raise cause and

24

prejudice or actual innocence.  If not raised by petitioner, the court need not consider the defaulted claim.  <u>Kornahrens v. Evatt</u>, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

As indicated above, a number of Glover's claims were not properly raised in state court and are procedurally barred.

### Conclusion

The undersigned concludes that the present petition is untimely and should be dismissed for that reason.  Even if the grounds raised in the Petition are considered on the merits, Petitioner is not entitled to relief.  Therefore, after a review of the record, it is recommended Petitioner's motion for summary judgment should be **denied** and that the Respondent's motion for summary judgment be **granted**, and the Petition **dismissed** without an evidentiary hearing.

                                            _____

                                            Joseph R. McCrorey
                                            United States Magistrate Judge

May 31,  2011
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

25

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).